## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

JAMES GARLAND MANN,

     Petitioner,

v.                          Civil Action No. 3:11CV711

HAROLD CLARKE,

     Respondent.

### MEMORANDUM OPINION

James Garland Mann, a Virginia prisoner proceeding with counsel, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Curtis challenges his conviction for first degree murder in the Circuit Court for the County of Goochland. Mann raises the following claims of ineffective assistance of counsel:

| | |
|---|---|
| Claim One | Counsel did not request a jury instruction "stating that 'The failure of the evidence to disclose any other criminal agent than the defendant is not a circumstance that may be considered by the jury in determining whether or not he is guilty of the crime with which he is charged.'" (§ 2254 Pet. ¶ 46.)[1] |
| Claim Two | "[C]ounsel failed to advise Petitioner of his personal and constitutional right to testify in his own defense and/or permit the Petitioner to testify . . . ." (Id. ¶ 64.) |
| Claim Three | Counsel failed to present evidence that, in the aftermath of Mann's suicide attempt, Mann "was completely 'out of it,' non-responsive, and unable to communicate at all at the time that he |

[1] The Court has omitted emphasis in the quotations to Mann's submissions.

was initially observed and continuing for several days thereafter." (Id. ¶ 80.)

Respondent has moved to dismiss on the ground that Mann's claims lack merit. Mann has responded. The matter is ripe for disposition.

## I. APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that

2

determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

## II.  PERTINENT PROCEDURAL HISTORY

A jury in the Circuit Court found Mann guilty of the first degree murder of Jason Carr.  On appeal, Mann challenged the sufficiency of the evidence.  The Court of Appeals of Virginia aptly summarized the ample evidence of Mann's guilt as follows:

> [A]t approximately 7:15 a.m. on July 18, 2005, Jason Carr, the manager of Stone Mountain Carpet Outlet (Stone Mountain), was found slumped against the door of the business. Carr had been shot in the back with a .22 caliber firearm.  Lieutenant James Mann[2] learned that Carr had removed appellant, a contract carpet installer, from Stone Mountain's list of carpet installers and that appellant had previously threatened and yelled at Carr.  Later that day, [the Lieutenant] went to appellant's residence and appellant stated that at approximately 6:00 a.m. he checked his horses and at approximately 7:50 a.m. he went to a store.  [The Lieutenant] saw several firearms inside appellant's house, and appellant gave a .22 rifle to [the Lieutenant].  Later, when the authorities executed a search warrant for appellant's house, they seized .22 bullets.  The authorities also found the front license plate missing from appellant's van and duct tape over Harley Davidson stickers on the van's back window.  The authorities found the license plate inside appellant's house.  A witness testified that appellant's van was well known because of these stickers.

---

2  Lieutenant Mann is not related to James Garland Mann. (Trial Tr. 278.)  In order to avoid confusion, the Court will refer to Lieutenant Mann as "the Lieutenant."

3

James Pickelman, an expert in firearm tool marks identification, testified that two bullets found in appellant's house were consistent with the bullets removed from Carr's body, but that the bullets from Carr's body had not been fired from the rifle taken from appellant's house.

On July 18, 2005, appellant was scheduled to work at June Frick's house, but he did not show up. The next day, appellant called Frick and said that he had hurt himself in a horseback accident the prior weekend. Other witnesses testified that they saw appellant on July 18, 2005 and that he did not appear to be injured.

On July 20, 2005, Shannon Haskins, appellant's daughter, found a package outside her house. The package contained letters written by appellant stating that he was going to commit suicide. One letter stated that he knew this was coming for four years[3] and he did not want "to endure the indignity of the law." Carr and appellant knew each other for four years. After finding the package, Shannon and her husband, Tommy Haskins, went to appellant's house and found him on the floor. Shannon asked appellant if he had tried to commit suicide because of Carr, and appellant nodded his head affirmatively. Shannon asked, "Did you do it?" and appellant nodded his head and mouthed, "yes." On the way to the hospital, Shannon called her ex-husband, Wallace Richardson, and Shannon and Richardson testified to the details of the conversation. Later, while recuperating from the suicide attempt, appellant told Shannon that the gun was in the river and appellant told Shannon and Tommy that he committed the murder because of poor judgment. Initially, Shannon and Tommy told the investigators and the grand jury that appellant had not made any statements to them about the murder. However, they later changed their testimony and were granted immunity from prosecution for perjury.

Linda Alt, appellant's friend, testified that in the spring 2005 appellant stated Carr had "blackballed" him as a carpet installer and he was unhappy about the situation. Alt visited appellant

---

[3] Carr had begun working at Stone Mountain four years earlier. (Trial Tr. 216).

4

after he attempted suicide, and appellant stated that
he attempted suicide because after the authorities
questioned him about the murder, he heard his deceased
mother's voice tell him he could not run away from
this one. Leeuwin Anderson and Jason Ward, convicted
felons and inmates with appellant in the jail,
testified that they spoke to appellant on different
occasions and that appellant admitted killing Carr.

Jorge Botero, a defense witness, testified that
he saw a small car leave Stone Mountain's parking lot
or an adjacent car dealership's parking lot between
6:55 and 7:00 a.m. on July 18, 2005. James Massa,
appellant's cellmate, testified that he never heard
appellant admit to Ward that he killed Carr. Dr.
Martin Buxton, a psychiatrist, testified that
appellant was clinically depressed in July 2005 and
that it would be reasonable for a clinically depressed
person suspected in a homicide to attempt suicide.

. . . .

The evidence showed that Carr had removed appellant
from the installer's list for Stone Mountain and that
appellant had threatened Carr. Appellant confessed to
killing Carr to family members, to a friend, and to
jail inmates. Bullets found in appellant's house were
consistent with bullets removed from Carr's body,
unique stickers on appellant's van were covered with
duct tape, and a license plate had been removed from
the van. Appellant failed to go to a scheduled job on
July 18, 2005 and told the individual he had been
injured the prior weekend; however, witnesses
testified that appellant did not appear injured on
July 18, 2005. There was sufficient evidence
supporting the jury's verdict.

Mann v. Commonwealth, No. 0246-07-2, at 1-4 (Va. Ct. App. Sept.

14, 2007). On April 25, 2008, the Supreme Court of Virginia

refused Mann's petition for appeal. Mann v. Commonwealth,

No. 072591 (Va. Apr. 25, 2008).

Thereafter, Mann, by counsel, filed a petition for a writ

of habeas corpus with the Circuit Court. In that petition, Mann

raised, _inter alia_, the same three claims he presses in his federal habeas petition.   After conducting an evidentiary hearing on Claim Two, the Circuit Court denied Mann's state habeas petition.   Mann v. Clarke, Dir., Va. Dep't Corr., No. CL09-105, at 3 (Va. Cir. Ct. Dec. 30, 2010).   Mann appealed. The Supreme Court of Virginia refused Mann's petition for appeal.   Mann v. Johnson, No. 110613, at 1 (Va. July 27, 2011).

### III.   ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense.   Strickland v. Washington, 466 U.S. 668, 687 (1984).   To satisfy the deficient performance prong of Strickland, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"   Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).   The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the

outcome." <u>Strickland</u>, 466 U.S. at 694.   In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.  <u>Id.</u> at 697.

### A.   Claim One

In Claim One, Mann faults counsel for not requesting a jury instruction which stated, "'The failure of the evidence to disclose any other criminal agent than the defendant is not a circumstance that may be considered by the jury in determining whether or not he is guilty of the crime with which he is charged.'"  (§ 2254 Pet. ¶ 46.)  In rejecting this claim, the Circuit Court made the following pertinent findings:

> Respondent argues that the trial court correctly instructed the jury on presumption of innocence under the model instruction where each and every element of the offense must be proven beyond a reasonable doubt. The Respondent further argues that there was no evidence tending to implicate some other person other than the accused.  Trial counsel's affidavit explains why he did not seek to give this instruction because of no evidence of another suspect.
> The question of giving this instruction is answered in the case cited to the Court of <u>Patillo v. Commonwealth</u>, Record No. 2952-08-2 (2010).  As noted by the Court of Appeals, a party offering an instruction has the burden of demonstrating that the requested instruction was a correct statement of the law, was applicable to the facts of the case, and was expressed appropriately.
> The instruction in question was the same in the case at bar:  "The failure of the evidence to disclose any other criminal agent than the defendant is not a circumstance that may be considered by the jury in

7

> determining whether he is guilty of the crime with
> which he is charged."
>       The Court of Appeals ruled that the subject of
> the requested instruction was covered by other
> instructions given to the jury by the trial court in a
> clearer manner than the requested instruction. There
> was no error in denying the requested instruction.
> The same logic and ruling is applicable in this case
> as the trial court's instructions covered the
> principles covered in the requested instruction. This
> claim is denied and the Motion to Dismiss is granted.

Mann v. Johnson, No. CL09-105, at 2-3 (Va. Cir. Ct. June 29,

2010). Given that the resolution of Mann's claim of ineffective

assistance of counsel is highly dependent upon Virginia law,

Mann cannot show prejudice. Richardson v. Branker, 668 F.3d

128, 141 (4th Cir. 2012) ("When a claim of ineffective

assistance of counsel raised in a habeas corpus petition

involves an issue unique to state law, such as [certain jury

instructions], a federal court should be especially deferential

to a state post-conviction court's interpretation of its own

state's law.") Moreover, counsel reasonably perceived that the

requested instruction "would have just highlighted the fact that

there was no other suspect and would have done more harm than

good." Respondent's Motion to Dismiss Ex. B (affidavit of trial

counsel) ¶ 9, Mann v. Johnson, Dir., Va. Dep't Corr., No. CL09-

105 (Va. Cir. Ct. filed Aug. 14, 2009). Because Mann has not

demonstrated deficiency or prejudice, Claim One will be

dismissed.

8

## B.   Claim Two

In Claim Two, Mann contends that counsel failed to advise him regarding "his personal and constitutional right to testify in his own defense and/or permit the Petitioner to testify." (§ 2254 Pet. ¶ 64.)   As explained below, this claim lacks factual merit.

The Circuit Court recited the evidence pertinent to this claim as follows:

> At the November 22, 2010 hearing, James Garland[ ] Mann, Petitioner, testified that Todd B. Stone, his retained attorney, told him he could not testify at trial because he was not educated or experienced and that the prosecutor would attack him on the stand.  This statement was made on Day 3 of the trial.  Mr. Mann said Mr. Stone said to sit down and "shut up" when Mr. Mann told Mr. Stone he wanted to testify. Additionally, Mr. Mann was never called as a witness and was never asked questions by the Court as to his right to testify.  He further said he did not know he had a legal right to testify, even if his attorney advised against it.
> Mr. Mann also testified that Mr. Stone brought him Respondent's Exhibit #1[3] received into evidence on September 12, 2006 at the Henrico County Jail and pushed it under the glass separating them in the meeting room.  Petitioner said he did not have his glasses and could not read it.  He did say he wrote in blue ink the answers to Questions 1 and 3 on page 2 of

---

[3] Respondent's Exhibit 1 is a letter from Stone to Mann, which responds to Mann's complaints with respect to Stone's preparation of the case for trial.  Respondent's Evidentiary Hearing Exhibit #1, Mann v. Johnson, No. CL09-105 (Va. Cir. Ct. filed Nov. 22, 2010). The end of the letter has a series of questions and/or statements from Stone to Mann and provides space for Mann to answer those questions.  Id. at 2-3.

the September 12, 2006 letter and pushed it back to
Mr. Stone in the metal tray under the glass.
      Todd B. Stone, Esquire testified he thought he
mailed Respondent's Exhibit 1 and Petitioner's Exhibit
1 (August 25, 2006 letter to Clerk requesting
subpoenas for trial) as a five (5)-page document to
Mr. Mann, but he noticed that Respondent's Exhibit 1
was not folded and therefore, he was not sure he
mailed it. Thus, he may have hand-delivered it, but
Mr. Stone has no recollection of any conversation with
Mr. Mann about either exhibit. He testified he
thought he received Mr. Mann's blue ink hand-written
comments to Questions 1 and 3 on Respondent's Exhibit
1 by mail.
      Mr. Stone also testified that at the close of the
Commonwealth's case in the three-day trial, which
began on September 19, 2006, he had a private meeting
in the courthouse with Mr. Mann of 20 minutes to an
hour about whether Mr. Mann should testify at trial.
In his testimony Mr. Stone said: "I was very clear
with him that you have a right to testify if you want
to." Later in that same conversation Stone advised:
You may wish you had testified if you are convicted,
and you have a right to. But where we are now, you
know, we don't have the benefit of hindsight, I think
you will dig a big hole for yourself [if] you testify.

Mann v. Johnson, Dir., Dep't Corr., No. CL09-105, at 2 (Va. Cir.

Ct. Nov. 29, 2010).

      In rejecting this claim, the Circuit Court made the

following factual findings:

      In evaluating the testimony on the two separate
      recollections of the evidence, the court notes it is a
      credibility issue it has to resolve. The first is the
      testimony of each witness as to whether at any time
      Mr. Stone told Mr. Mann that he had a right to
      testify. Mr. Mann says it was Day 2 or 3 of the trial
      when he says Mr. Stone said he could not testify at
      trial. In his affidavit submitted with his petition,
      he said he wanted to testify but he was not allowed to

10

do so by his attorney. He asserts he wanted to testify, but did not know it was his decision.

That testimony is countered by Mr. Stone stating a specific recollection of meeting with Mr. Mann at the conclusion of the Commonwealth's case and going over his right to testify and the giving of Mr. Stone's advice not to testify. Mr. Stone said the private meeting lasted 20 minutes to an hour. Mr. Mann did not rebut this testimony other than as above stated. The Court notes it is difficult to believe that a defense in a jury trial on a not guilty plea was not discussed with Mr. Mann and what testimony Mr. Mann could give to show Mr. Mann did not commit the crime. However, that does not answer the question of whether Mr. Mann knew of his right to testify.

The second factual evidence presented to the court involves the two exhibits as Respondent's Exhibit 1 and Petitioner's Exhibit 1. Respondent's Exhibit 1 is a letter from Mr. Stone to Mr. Mann about Mr. Mann's "deep dissatisfaction" with preparation of the case seven (7) days before the beginning of the trial. The Court concludes this letter got to Mr. Mann by some form of delivery. It also concludes Mr. Mann considered the letter and responded in his own hand-writing to Questions 1 and 3 on page 2. Question 1 does address the witnesses subpoenaed as noted in Petitioner's 1, which is consistent with Mr. Stone saying the two exhibits were presented as one document to Mr. Mann. The answer repeats a name on the list (Petitioner's Exhibit 1). Questions 2, 4, 5, 6 and 7 are not answered. Question 7 is the critical one at issue before the Court.[4] Mr. Mann says he did not read the letter because he did not have his glasses- yet he was able to answer two of the questions. Mr. Stone has no recollection of discussing either exhibit with Mr. Mann. Mr. Mann's "OK" comment on Question 3 does not list any complaints, which seems like the logical interpretation. The Court cannot explain how Mr. Mann could answer Questions 1 and 3 and believe

---

[4] Question 7 states, "I understand that I have a right to testify in my trial, even if my lawyer advises me not to testify." Respondent's Evidentiary Hearing Exhibit #1, at 3, Mann v. Johnson, No. CL09-105 (Va. Cir. Ct. filed Nov. 22, 2010).

11

that Mr. Mann could not read the questions because he
did not have his glasses.  A reasonable inference is
that if he read Questions 1 and 3, it seems he must
have read the letter in its entirety.

**CONCLUSION**

The testimony of Mr. Stone is more believable
than Mr. Mann's testimony.  In other words, the Court
finds Mr. Mann was advised of his right to testify and
chose not to do so.  Therefore, [Mann's claim that
counsel provided inadequate assistance with respect to
advising Mann about his right to testify] is dismissed
as being insufficient to satisfy the first prong of
Strickland.

Id. at 3-4.

For the reasons stated by the Circuit Court, Mann fails to

demonstrate that counsel performed deficiently.  "Mann was

advised of his right to testify and chose not to do so." Id.

at 4.  Mann has not demonstrated by clear and convincing

evidence that the Circuit Court's factual finding in this regard

is incorrect.  See 28 U.S.C. § 2254(e)(1).  Accordingly, Claim

Two will be dismissed.

C.   **Claim Three**

In Claim Three, Mann complains that counsel failed to

present testimony from medical personnel to demonstrate that

Mann could not communicate immediately after his suicide

attempt.  Mann contends such testimony would have rebutted the

testimony of his daughter, Shannon Haskins, that Mann admitted

12

to her after his attempted suicide that he had killed Carr.   In

rejecting this claim, the Circuit Court stated:

> Mann had been discovered by Haskins in a compromised
> medical state after Mann had attempted suicide by
> taking an overdose of pills.   Petitioner asserts that
> medical evidence would have shown Mann was not able to
> communicate as described by Haskins.
>     Respondent asserts that Mann has made no proffer
> that medical evidence would have shown that Mann was
> not able to communicate as described by Haskins in her
> testimony at pages 326-329 of the Trial Transcript.
> There is no proffer of what the EMT responders to the
> suicide attempt would have said in testimony to refute
> said account by Haskins.   In defense counsel's
> affidavit he states he spoke to the initial responders
> to the suicide attempt and there was nothing of value
> to present as evidence for the defendant.
>     The Court finds that the legal authority cited to
> the Court by Respondent, Bassett[e] v. Thompson, 915
> F.2d 932, 940 (4th Cir. 1990), is persuasive and
> sustains the Motion to Dismiss on Claim III.

Mann v. Johnson, Dir., Va. Dep't Corr., No. CL09-105, at 4 (Va.

Cir. Ct. June 29, 2010).

Mann fails to demonstrate prejudice.   The record reflects

that Mr. and Mrs. Haskins were the first persons to arrive at

the scene of Mann's attempted suicide.   Mrs. Haskins remained at

the scene with Mr. Haskins for an indeterminate amount of time

before any emergency personnel arrived.   Mann fails to

demonstrate that any emergency personnel or other medical

professionals could credibly impeach Mrs. Haskins's testimony

about Mann's actions prior to their arrival upon the scene.

Additionally, even if the testimony of the emergency responders or other medical personnel could create some doubt regarding Haskins's testimony that Mann had nodded his head and mouthed the word "yes" to the question of whether Mann had killed Carr, no reasonable probability exists that Mann would have been acquitted. After he had significantly recovered from his suicide attempt, Mann indicated to Mrs. Haskins that the murder weapon was in the river and that the murder of Carr was the product of "poor judgment." Mann v. Commonwealth, No. 0246-07-2, at 2 (Va. Ct. App. Sept. 14, 2007). Moreover, an abundance of other evidence convincingly demonstrated Mann's guilt.[5] Claim Three will be dismissed.

---

[5] Specifically, as noted by the Court of Appeals of Virginia:

> The evidence showed that Carr had removed [Mann] from the installer's list for Stone Mountain and that [Mann] had threatened Carr. [Mann] confessed to killing Carr . . . to a friend[ ] and to jail inmates. Bullets found in [Mann's] house were consistent with bullets removed from Carr's body, unique stickers on [Mann's] van were covered with duct tape, and a license plate had been removed from the van. [Mann] failed to go to a scheduled job on July 18, 2005 [the day of the murder] and told the individual he had been injured the prior weekend; however, witnesses testified that [Mann] did not appear injured on July 18, 2005.

Mann v. Commonwealth, No. 0246-07-2, at 3-4 (Va. Ct. App. Sept. 14, 2007).

14

The Motion to Dismiss (Docket No. 3) will be granted.  The § 2254 Petition will be denied and the action will be dismissed. The Court denies a certificate of appealability.[6]

The Clerk is directed to send a copy of the Memorandum Opinion to counsel of record.

                                          /s/   *REP*
                                    _____
                                    Robert E. Payne
                                    Senior United States District Judge

Richmond, Virginia
Date: *June 22, 2012*

---

[6] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A).  A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  No law or evidence suggests that Mann is entitled to further consideration in this matter.

15